May it please the Court, Shaunti Bryan on behalf of Petitioner and Appellant Tyreece Reynolds. This case is the product of a big misunderstanding about Mr. Reynolds' access to the Prison Law Library, coupled with the District Court's apparent mistrust of Petitioner. So Mr. Reynolds is sitting in his cell and he's asking and asking and asking to go to the law library, and the prison tells him he can't go because the librarian has been ill. And he forwarded this explanation to the District Court, and when it turned out that the explanation wasn't quite accurate, the District Court thought that it was Mr. Reynolds who had been lying. And the District Court and Respondent insist that Mr. Reynolds is untrustworthy, that he has unclean hands, that he's somehow trying to sham the Court. And I think a close exam of the record shows that this isn't the case. Unfortunately, Mr. Reynolds was never given the opportunity to explain what happened. He was never given a chance to explain that it was the librarian, apparently, that was being misleading or inaccurate and not him. I think it's the library assistant. These documents weren't signed by the librarian, right? They were signed by a library assistant who was an employee? Yes, the LTA, I think, is the library technical assistant. So it was explaining that he, in all these months, couldn't come or came very, very sporadically, was allowed to go to the library very sporadically because of the staff illness. This is the first technical question, whether the magistrate judge had any business taking judicial notice of these documents at all. Did he? I believe, I initially believed that there was no way that that could be possible. And honestly, the legal research I did, I couldn't find a clear rule saying he couldn't, on his own, go do this investigation or look into it. What I think is very clear is that if the magistrate is going to use this evidence that he and his clerks gathered independently, there should absolutely be notice to the petitioner and absolutely be an opportunity for Mr. Reynolds to respond, to explain, to highlight the inconsistencies and the problems in the evidence that the court gathered. And this never, he wasn't ever given an opportunity to respond. I think if he was, he could have explained, as I think I've explained in the brief, that there was a reasonable explanation for the delay. Well, he was told by the library that the library was closed for almost months at a time. That's correct. And the months were listed. Yes. And apparently there may be some conflict between the notes that he received from the library and what the magistrate, the judge's clerk, was able to determine by calling the prison and jotting down some dates when the library was apparently open. But when he wanted to use the library and send a note, he was denied and the explanation that was given was the library was closed because of staff illness. That's right. That's all he knew. But the records seem to demonstrate that he was actually at the library a couple times when he said it was closed, I think. Yes. And also that he was a no-show at other points. Well, the record I think is unclear about the no-show or not. That could have been developed in an evidentiary hearing, which obviously wasn't granted. He claims that this wasn't developed below, but he claims there were some times when he was out of the prison for surgery on his right arm. There were two days apparently he missed for that. But looking at, say, the 200-day period, the first main period, in the first 60 days of that period where his petition would have been presumptively timely, he was only allowed to go to the library on one day during those 60 days. And I think it was three other days after that during the 200-day period. But even then, I think the record's unclear because on one of the days they claimed he went, the records show that the prison actually day was canceled, the library, on that day. So the record's unclear. The note from the library was that it was closed at least for the months of June, July, September, and October. Yes. And the district court first held that that original 200-day gap was reasonable, but said that the petitioner failed to explain the 86-day gap, but the ordinance show cause only talked about the 200-day gap. Exactly. And so, and then this investigation took place, and then without a hearing, without giving the petitioner an opportunity to respond, the magistrate then concluded that the information that was presented to the court there on the 200 days was inaccurate or false, and that, so he pulled back, the magistrate judge pulled back on that, and then same thing on the 86 days. Correct, Your Honor. But he had no hearing. So you're asking that the matter be revanded for hearing. I'd prefer that the decision be reversed and that there be an order saying that, in this case, the explanation was reasonable, that statutory toiling is warranted. Well, the only way we could do that is if we thought that the magistrate judge had just no business doing this. And you've walked away from that position. Other than that, there is evidence in the record that somewhat contradicts the story, and there would have to be a hearing. I think that the evidence shows that, although the original interpretation that during the 286 days, I guess the district court thought that he was claiming that he was absolutely barred from going to the library. Well, it's claiming that the library was closed when it shows it was open and so on. So, I mean, unless you get some explanation for why these letters read as they read and also why he said that it was closed when he was there some of the times and knew it was not closed, I don't know, it seems to me somebody's got to make some fact findings here. I think that he claimed that he didn't have access to the law library, and the district court interpreted that as meaning it was closed the entire period. He's meaning I got to go in 200 days, I got to go to the library at most four times. And that is clear from the record. During the 86-day period, it was at most seven times. All after a complaint. All after he continually was complaining and was continually requesting to go. He was diligent about getting there. And I think that under Evans v. Chavez, that's a reasonable explanation for a 200-day and an 86-day delay, which is under the record that we have here, access for only four days during a 200-day period is a reasonable explanation. This isn't the extraordinary circumstances standard of equitable time. Didn't that come in later on? After the magistrate judge found that the district judge found that the 200-day delay was reasonable. He was just relying on information that he got. He's in a cell somewhere. He isn't like walking around a mall just checking whether the library is open or not. He doesn't have that freedom, I wouldn't think. So, well, you're over your time. Thank you. Okay. Good morning. May it please the court. Matt Mulford on behalf of the warden. Unless the court has a particular area that you'd like to start with, I'd prefer to take a step back and talk about habeas, how it fits in with United States jurisprudence in general. Ordinarily, the rule in a civil case is that a final state court judgment is never reheard in this court. No, I don't think, I don't, well, I have no idea where you're heading, but the problem here is basically a due process problem, it seems to me. Whatever the purpose of habeas is, I mean, how does a judge get off doing his own investigations, putting things on the record, and not letting the party respond to it? Well, we don't believe that's an accurate characterization of what happened. But the judge does have a broad, magistrate judge has very broad authority under habeas rule four to analyze and look at the petitioner's filings and pleadings. And to go get information that's not in the record? I'm sorry? Of the opposing party? I'm talking about habeas corpus rule four following. Yes, I know. But where does he have the authority to go get information that's not in the record from one of the parties before him? The second thing I was going to rely on. Well, where does he have it? Does he? The Federal Rule of Civil Procedure 6DB has extraordinarily broad equitable powers, and the judge can ask for the documents that are germane to the issue of timeliness. This Court has lots of opinions that say state court records can be examined for this purpose. Well, this isn't a state court record. This is not a state court record. Well, it's a state prison record. Right. Well, that's not a court record. It's hearsay. It's hearsay. The Federal Mailbox Rule, the Federal Rule of Appellate Procedure 4, specifically allows this type of information to come in. So there's the judge has broad... Wait a minute. Okay. Well, let's take it that the magistrate judge can reach out to pull in documents. Are you saying that we should also hold, we should write an opinion in this case, saying the magistrate judge can call in documents and he can interpret them based on whatever perception he may have, and the prisoner has no opportunity to explain them? Do you think that's the rule? No, and I don't think we've argued for that rule. When did this petitioner get an opportunity to deal with the issues relating to the 86 days? Well, the judge put him on notice that his petition would be dismissed for violations of the statute of limitations. At that time, he should have put on every piece of evidence that he had concerning his delays and what was going on. And respond to when did he learn that the librarian had informed the magistrate judge that it was not closed full time during that time, notwithstanding another apparent prison document that suggests that it was. The magistrate judge's contact with the librarian after judgment had been issued in this case, so it would have been well after the time that he was trying to go to the librarian, in fact, using the library. Have you ever seen something like this happen before? I'm not sure what you're referring to. Had the magistrate judge going and getting information directly from one of the parties to the case, i.e., the prison warden, essentially, and interpreting that information, which is hearsay and not a public document, and then not allowing the petitioner to have put in counter evidence or explain anything? No. Not in those words. I have not seen that. Or even any piece of it? Any sub-piece of it? The magistrate judges frequently, and their clerks frequently, seek information from the parties of this type, particularly mail logs, how the prison system works, because it's complicated and it's confusing. There are lots of California regulations. Not on the record, just going behind the record, rather than putting out an order saying, please give me something? Habeas records are different to the normal records, and that's kind of where I would start it with. They are state court documents, so the entire record is... This is not a state court document. It is not a state court document. It's a state government record. It's not a state government record. The librarian, when they send those notes out, was not, you know, just sloughing them off, saying, sorry, you know, we're closed, you know, June, July, August, September, October, because people are sick. Respectfully, that's not how we interpret it.  If I called up the library and said I'd like to see these records, I mean, I'm this citizen. I'm not Judge Berzon. Could I see them? Probably not. Exactly, because they're not public records. I bet they could be gotten through a California public access record request. I've never tried to do that myself, because, again, when I send them from the Attorney General's office, they send them to me, and then I will provide them to the court when my office is a party in the litigation or representing the word in the litigation. So it's not, from my perspective, it's not unheard of that this sort of thing happens. Can I get clarification on your answer to my previous question? Assuming this process exists, as you talk about, where in this process did this petitioner, this prisoner, get a chance to deal with the document on which the magistrate judge relied, the state record, if you will, the government record? Where did he get a chance to confront that particular document? Those documents, if I just want to make sure I understand it, those documents were prepared or compiled after the judgment was issued and during the course of the Rule 60B motion. At that point, the judgment had already been entered, and there was no time within the district court itself that Mr. Reynolds had the opportunity to respond. But this Court's jurisprudence allows him to file a second Rule 60B motion. We could talk about that today. And so it is within the district court's jurisdiction and broad discretion to do what they did. Now, I want to talk specifically about one thing. That's a legal conclusion. That's our argument, yes. That's your argument. Just so I understand, if we were to validate the process where the magistrate judge can do some investigation, that would still leave open the question in this case as to whether or not the results of that investigation would be specifically presented to the prisoner so that he could then offer an explanation. I think that's fair, yes. And you're saying, well, the magistrate judge having entered the order, the final judgment, relying on that document, his relief is to come along after and say, wait a minute, I want to be able to explain. Is that your position? Yes. No, we have a doctrine in the immigration field which is pretty loosey-goosey on due process, too, which is not totally without analogy because, again, dealing with pro se people. One of the doctrines even the Board of Immigration Appeals has adopted and the circuit certainly has adopted is that you cannot rely, the immigration judge can't rely on an impeaching ground, be it a document or otherwise, without giving the immigrant a chance to explain. So why would in the habeas the same rule not apply, the same kind of rule? I see nothing wrong with applying that same rule in the abstract. In this case, it's a little different because the judge provided notice for him to put all of his evidence on the record before there was a ruling and a judgment, and so these things happen post-judgment. So I want to make that distinction. Counsel, look, I've tried a lot of cases. You've tried a lot of cases. You would not sit still for the notion that, well, you were given an opportunity to put your best case forward and then the judge turns around the line on a piece of evidence, a document created by the adversary party that you, your client, never got a chance to confront and explain. And the Federal rules provide a post-judgment tolling motion to make those sort of requests. First of all, it's not a tolling motion. A Rule 60b motion is not a tolling motion. And it's not required. I mean, in general, if somebody, if there's a denial of due process in a district court, a denial of any kind of process, you can take an appeal. You don't have to file a 60b motion. Ordinarily, does an ordinary civil litigant have to file a 60b motion if the procedures that lead to final judgment haven't been complied with, rather than filing an appeal? The only information that the judge relied on before entering judgment was provided by Mr. Reynolds and was accepted by the district court judge. Right. Okay. So, and, this is a point I'd like to make before my time runs, that the prison uses these information interview request forms, the ones that we're talking about here, for two different and specific functions. If you ask for future use of the library, that information request form is your, the way you ask to book the room to get into the library. Those information and interview request forms are also used to look backwards to complain about things that have happened in an administrative room in prison. So, at least in our opinion, the district court judge and the magistrate judge here relied on two different types of interview request documents. In reaching the result that it did. Many of them signed by Mr. Reynolds said, I would like to use the library in the future, and he did go in fact on those days. So, in the 200 day gap, he asked to go to the library five times, was allowed to go four times, and the library was closed one of the days he asked to go. During the 86 day gap, he asked to go, filled out the forms 11 times, and in fact went at least seven of those times. Now, so there are, Judge Ferguson in particular pointed out that the librarian told him that looking backwards, that the library was closed for a period. It would be reasonable. The librarian put it in the form of months, months, months, months. But moreover, that assumes the truth of the state, of the hearsay documents that demonstrate that he asked to go four times, five times, and went four times, and he never saw those. Well, he signed them, so he did. But he didn't see them in the course of the litigation. He may say, there are ten more times I asked, but I didn't, but they didn't let me go. All of this, I'm sorry, all of this is based on the evidence provided in the Rule 60B motion. The final point I'd like to make, again, I'm out of time, I see, is that it doesn't matter, even if it is, assuming for the sake of argument, that the district court violated his due process rights in ruling on the 60B post-judgment motion. It doesn't matter as to his claim whether it's timely or not, because the California Supreme Court denied his California Supreme Court habeas corpus petition with a citation to a case called Swain, which stands for the proposition that that petition was untimely, and so with the untimeliness during the time that petition was in the state court but not officially pending under decisional law. Sotomayor, I thought Clark was the usual untimeliness. Excuse me again? I thought Clark was the usual untimeliness. There are at least three California cases that stand for the proposition. I thought Swain had a couple of rulings in it. It does. It has two. One of them is untimely. The other is, it's directed generally at pro se litigants who can't plead their cases properly and take a long time to do so. So it stands for both of those propositions. But you can't write timeliness. Well, if both of them apply, then timeliness certainly should apply as well. Did the order to show cause refer to the 86-day delay? It did not, but it did not need to. Oh, okay. It did not need to. All right. It needed to provide him notice, and he received adequate notice. Okay. All right. Thank you. Thank you. Both of your times are up, I think. All right. Thank you very much, and we'll go to the next matter. And that is Valdez versus Omega.
judges: Pregerson, Fisher, Berzon